# United States Court of Appeals

## For the Eighth Circuit

_____

No. 18-1585
_____

Jeff Hale, on behalf of himself and all others similarly situated; Raymond Gray, on behalf of himself and all others similarly situated; Andrew Bowers; Emilio Gonzales; Kenneth Thompson, on behalf of themselves and all other similarly situated; Eric Shults; Justin Swires, individually and on behalf of all others similarly situated; Estaban Maravilla, individually and on behalf of all others; Lauren Checki; Kevin Brees; Chad Venhaus; Chris Willis; Fred Wilmer

*Plaintiffs - Appellees*

v.

Emerson Electric Company

*Defendant - Appellant*

Sears Holdings Corporation; Sears, Roebuck and Company; The Home Depot, Inc.

*Defendant*s

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: April 17, 2019
Filed: November 1, 2019
[Published]

_____

Before SMITH, Chief Judge, KELLY and KOBES, Circuit Judges.

_____

PER CURIAM.

Emerson Electric Company appeals from an order certifying a nationwide class of plaintiffs in a case involving allegedly deceptive advertising practices. The district court ruled that all class members' claims would be governed by Missouri law and therefore determined class resolution was appropriate. We reverse and remand for further consideration.

I.

This suit arises out of allegedly deceptive advertising associated with RIDGID brand vacuums. Emerson, a Missouri corporation, manufactures, markets, and sells RIDGID vacuums. It makes all marketing decisions regarding the vacuums in Missouri. Emerson markets the vacuums by emphasizing their "peak horsepower"—the maximum potential output of the vacuums' motors. Emerson acknowledges that the vacuums can only achieve "peak horsepower" in a laboratory. A consumer using a standard wall outlet would achieve less horsepower than advertised.

Plaintiffs allege advertising based on peak horsepower is misleading and bring claims for violations of the Missouri Merchandising Practices Act (MMPA), Mo. Rev. Stat. § 407.010, et seq., breach of express warranty, breach of implied warranty, unjust enrichment, violations of other states' consumer protection laws, and redhibition (on behalf of a Louisiana sub-class).

The Judicial Panel on Multidistrict Litigation assigned this case to the district court as a consolidated action and the district court oversaw discovery. At the close

-2-

of discovery, Plaintiffs sought to certify a nationwide class. The district court applied Missouri choice of law rules and determined that all claims should be governed by Missouri law. It then certified the class under Federal Rule of Civil Procedure 23(a) and 23(b)(3). We have jurisdiction over Emerson's interlocutory appeal. 28 U.S.C. § 1292; Fed. R. Civ. P. 23(f).

## II.

We review a district court's grant of class certification for abuse of discretion but review rulings on issues of law de novo. In re St. Jude Medical, Inc., 425 F.3d 1116, 1119 (8th Cir. 2005). To certify a class, a district court must find that the plaintiffs satisfy all the requirements of Rule 23(a) and one of the subsections of Rule 23(b). Id. (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997)). The district court certified the class based on Rule 23(b)(3), which requires finding that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "[V]ariations in state law may swamp any common issues" and defeat class certification under Rule 23(b)(3). See Castano v. Am. Tobacco Co., 84 F.3d 734, 741 (5th Cir. 1996).

Emerson argues that the district court erred twice. First, the claims of non-Missouri residents do not relate to "trade or commerce . . . in or from the state of Missouri" and the MMPA cannot be applied to them. Second, the district court should have conducted separate choice of law analyses for the breach of warranty and unjust enrichment claims. We agree.[1]

---

[1]Emerson also argues that the district court erred in finding that common issues predominated, in conducting an inadequate Daubert inquiry into Plaintiffs' expert reports, and in finding that Hale would adequately represent the class. Because the

The MMPA provides a private right of action for "any deception, fraud, false pretense, false promise, misrepresentation, [or] unfair practice . . . in connection with the sale or advertisement of any merchandise in trade or commerce . . . in or from the state of Missouri." Mo. Stat. §§ 407.020.1; 407.025.1. Where a party seeks to certify a nationwide class under the MMPA, we can resolve the case based on that statute's scope. See Perras v. H & R Block, 789 F.3d 914, 917 (8th Cir. 2015).

We have explained that although the MMPA covers every kind of unfair practice, a plaintiff's claim nevertheless must involve commerce "in or from the state of Missouri." See Perras, 789 F.3d at 917–18; Ports Petroleum Co. of Ohio v. Nixon, 37 S.W.3d 237, 240 (Mo. banc 2001); State ex rel. Nixon v. Estes, 108 S.W.3d 795, 801 (Mo. Ct. App. 2003). In Perras we held that a putative class action against H & R Block for an allegedly fraudulent "compliance fee"—designed and implemented at H & R's Missouri headquarters—did not satisfy that requirement. 789 F.3d at 918. We explained that,

> every part of the transactions . . . occurred in each class member's home state. In those states, each class member contacted and communicated with a local H & R representative at a local H & R office, contracted for tax-return services, and paid the allegedly deceptive compliance fee. And it was in each class member's state that H & R had displayed the purportedly fraudulent "materials" explaining the compliance fee.

Id. As a result, we held that the claims of class members from outside of Missouri did not involve commerce "in or from the state of Missouri" and the MMPA would not cover those transactions. Id. Rather, the laws of the states in which the transactions occurred applied. Id.

---

scope of the MMPA and the failure to conduct a complete choice-of-law analysis requires reversal and remand, we do not reach Emerson's other arguments.

The district court distinguished <u>Perras</u> and likened the case instead to <u>Estes</u>, where a business misleadingly advertised vending machines and promised massive profits to customers. 108 S.W.3d at 801. Unlike this case, in <u>Estes</u> both the business and the fraud had many ties to Missouri:

> Estes established and operated his business in Missouri, placed the [fraudulent] newspaper advertisements from company offices in Missouri, made telephone sales calls and mailed out information packets and purchase agreements for the vending machines and their contents from company offices in Missouri, received the signed sales agreements in Missouri, received wire transfers for hundreds of thousands of dollars in payments from his victims into Missouri bank accounts, and maintained a continuing commercial relationship with those victims from company offices in Missouri.

<u>Id.</u> As a result, the Missouri Court of Appeals held that the MMPA could be applied to claims brought by out of state plaintiffs against Estes. <u>Id.</u>

In our view, this case is more like <u>Perras</u> than <u>Estes</u>. As in <u>Perras</u>, every part of the challenged transaction took place in a class member's home state. Class members encountered the allegedly misleading advertising, purchased a vacuum, and ultimately were disappointed with its performance, all in their home states. As in *Perras*, the only relevant action taking place in Missouri was the design of the advertisement. That is not enough. The consumer protection law of each class member's home state governs each consumer protection claim and class certification is inappropriate as to those claims. <u>Perras</u>, 789 F.3d at 918; <u>see</u> <u>St. Jude</u>, 425 F.3d at 1120 ("State consumer protection laws vary considerably.") (quoting <u>In re Bridgestone/Firestone, Inc.</u>, 288 F.3d 1012, 1018 (7th Cir. 2002)).

As to the other claims in the case, the district court failed to conduct any choice of law analysis. As Plaintiffs acknowledge, Missouri applies the "most significant relationship" test to all claims, but considers different factors for claims sounding in

tort (the MMPA), contract (breach of warranty), and unjust enrichment. See Zafer Chiropractic & Sports Injuries, P.A. v. Hermann, 501 S.W.3d 545, 550–51 (Mo. Ct. App. 2016) (applying Restatement (Second) of Conflict of Laws § 145 to tort claims and § 188 to contract claims); Flynn v. CTB, Inc., 2013 WL 28244, at *6 (E.D. Mo. Jan. 2, 2013) (applying § 221 to unjust enrichment claims). A district court must conduct an individualized choice-of-law analysis that is susceptible to meaningful appellate review to ensure that the application of a given state's "law is neither arbitrary nor fundamentally unfair." St. Jude, 425 F.3d at 1120 (quoting Allstate Ins. Co. v. Hague, 449 U.S. 302, 313 (1981)). The district court did not do that here and so we remand. St. Jude, 425 F.3d at 1120.

We do not pass on Emerson's other arguments or the merits of the district court's choice of law analysis under the MMPA. The decision of the district court certifying a nationwide class action is reversed and we remand for further proceedings consistent with this opinion.

_____